IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| FRANCISCO J. CASTANEDA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:22-CV-021-Z-BR |
| | § | |
| BRYAN COLLIER, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION DISMISSING DEFENDANTS CARLILE, JUDD, AND EVANS

Before the Court is Defendant Tiffani Carlile's Motion to Dismiss. (ECF 60). After reviewing the Motion to Dismiss (ECF 60), Plaintiff's Amended Complaint (ECF 29), and the applicable law, the undersigned recommends that Defendant Carlile's Motion to Dismiss be GRANTED.

Likewise, for reasons similar to why Defendant Carlile should be dismissed, the undersigned recommends pursuant to 28 U.S.C. § 1915A, that Defendants Judd and Evans also be DISMISSED from the case.

### I.   BACKGROUND

**A.  Procedural Background**

Plaintiff brought this civil rights action against numerous defendants alleging several civil rights violations. (ECF 14; ECF 29). In his Original Complaint, Plaintiff named the following individuals as defendants: Bryan Collier, Adam Gonzales, Joe Tovar, Daniel Pacheco, Stephanie Juarez, Israel Barajas, Tiffany Carlile, Jackey Hayes Jr., Alex Gurrola, Julie Evans, and James Judd. (*See* ECF 14). In his Amended Complaint, Plaintiff added Defendant Lyndon Lane. (ECF

29 at 7). The only defendants that remain in the case now are Defendants Carlile, Judd, and Evans. (*See* ECF 48; ECF 66).

Plaintiff's remaining claims against Carlile, Judd, and Evans are all the same. (ECF 29 at 4). Those claims are for conspiracy, harassment, retaliation, and false imprisonment.

B. **Factual Background**

While Plaintiff's Original and Amended Complaint contain allegations against an array of defendants, the undersigned will attempt to focus on the factual background as it more narrowly applies to the remaining Defendants—Carlile, Judd, and Evans. Plaintiff alleges a multi-phase conspiracy against the named Defendants. (ECF 29).

He alleges the retaliatory conspiracy began after he wrote the El Paso County Clerk's office about his criminal conviction and mentioned that the Bill Clements prison unit was short-staffed and poorly managed. (ECF 29 at 5; ECF 31 at 8). Plaintiff asserts that on February 18, 2021 and February 19, 2021, when the El Paso Clerk's office filed the letters with Plaintiff's concerns, he received two disciplinary actions for assaulting officers and his cellmate, which Plaintiff claims resulted in an unnamed person throwing him into a seclusion cell during Winter Storm Uri. (ECF 29 at 5). He was then tried in a disciplinary proceeding by Defendant Judd, represented by Defendant Evans, and "convicted." (ECF 29 at 5).

After his disciplinary conviction, Plaintiff's sister complained to the Ombudsman, and he claims his conviction was overturned as a result. (ECF 29 at 5). Following his sister's complaint, Plaintiff was given the chance to provide a statement to Defendant Carlile, during which former Defendant Gurrola stood outside the room. (ECF 29 at 6). After Plaintiff provided his statement, left the office, and ate, he claims two unnamed guards used excessive force against him as a form of retaliation. (ECF 29 at 6). Plaintiff was subsequently taken to a crisis management cell because

he stated he was suicidal. (ECF 29 at 6). He eventually went to the Montford Hospital for several days. (ECF 29 at 6).

Once Plaintiff returned from the hospital, he claims the retaliation campaign against him resumed. (ECF 31 at 8). He alleges he was placed in a dirty cell and closely monitored with surveillance. (ECF 29 at 6). Further, he alleges that "someone let out word of [his criminal] charge to the general population" that caused him to be harassed and receive threats from other inmates. (ECF 29 at 6). As a result of the alleged threats and harassment from fellow inmates, Plaintiff alleges that he asked Defendant Carlile about a request for assistance, which Carlile told him she had not seen because she had been out for surgery. (ECF 29 at 7). On October 14, 2021, Plaintiff alleges former Defendant Lane used excessive force and knocked him out. (ECF 29 at 7). Plaintiff was taken to the prison infirmary after the altercation with Lane and claims Defendant Carlile laughed loudly at him along with a group of unidentified women. (ECF 29 at 7).

Although Plaintiff claims the retaliatory conspiracy against him persisted after October 14, 2021, none of those allegations named or involved Defendants Carlile, Judd, or Evans. (*See* ECF 29 at 7).

## II. LEGAL STANDARD

### A. Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted). Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a

3

cause of action. *Twombly*, 550 U.S. at 555 & n.3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

The facts pleaded must allow a court to infer that the plaintiff's right to relief is plausible. *Iqbal*, 556 U.S. at 678. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. *Id.* In other words, where the facts pleaded do no more than permit the court to infer the possibility of misconduct, the complaint has not shown that the pleader is entitled to relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

To state a cause of action under 42 U.S.C. § 1983, the plaintiff must allege that (1) some person has deprived him of a federal statutory or constitutional right, and (2) that person acted under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020). To establish a constitutional violation, Plaintiff must demonstrate that the deprivation alleged was sufficiently serious, i.e., deprived him of the minimal civilized measure of life's necessities, and that the prison official possessed a sufficiently culpable state of mind, i.e., the official acted with deliberate indifference to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Herman v. Holiday*, 238 F.3d 660, 664 (5th Cir. 2001). For an official to act with deliberate indifference, he must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must actually draw the inference. *Farmer*, 511 U.S. at 825, 837.

## B. Dismissal for Failure to State a Claim Under 28 U.S.C. § 1915A

Under § 1915(A), "the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b). The authority granted by § 1915 permits the court the "unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

### III. ANALYSIS

First, Plaintiff sues the remaining defendants in this suit in both their official capacity and their individual capacity. It is well settled law that state corrections officials acting in their official capacity are not "persons" under § 1983 and thus cannot be sued by a state prisoner for monetary damages. *See Walters v. Livingston*, 642 Fed.App'x. 416, *419 (5th Cir. 2016). Plaintiff only seeks monetary damages. Accordingly, each of Plaintiff's claims against Carlile, Judd, and Evans are only against each of them in their individual capacity.

## A. Defendant Carlile

Plaintiff asserts a claim against Carlile for harassment. (ECF 29 at 4). His claim is limited to alleged verbal harassment by Carlile against him. (ECF 29 at 5). Unfortunately, the Fifth Circuit has held that verbal harassment, by itself, does not support a constitutional claim. *Tyson v. Sabine*, 42 F.4th 508, 519 (5th Cir. 2022); *see, e.g.*, *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) ("It is clear that verbal abuse by a prison guard does not give rise to a cause of action under § 1983."); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983) (same).

Here, the only allegation in Plaintiff's Amended Complaint is that Carlile laughed at Plaintiff. (ECF 29 at 5). Even accepting that allegation as true and assuming it qualifies as verbal harassment, it does not amount to a constitutional violation. *See Tyson*, 42 F.4th at 519. Plaintiff's Amended Complaint does not meet the pleading requirement to state a claim for harassment against Carlile. Therefore, Plaintiff's claim for harassment against Carlile should be dismissed.

Plaintiff also asserts a claim against Carlile for retaliation. (ECF 29 at 3). In general, prison officials may not act against an inmate in retaliation for the inmate's exercise of his constitutional rights. *Woods v. Smith*, 60 F.3d 1161, 1165 (5th Cir. 1995). The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). However, such claims are regarded with skepticism and must be carefully scrutinized. *Woods*, 60 F.3d at 1166.

To prevail on a claim of retaliation, the prisoner must establish: (1) he was exercising or attempting to exercise a specific constitutional right; (2) the defendant intentionally retaliated against the prisoner for the exercise of that right; (3) an adverse retaliatory action, greater than *de minimis*, was undertaken against the prisoner by the defendant; and, (4) but for the retaliatory motive, the adverse action would not have occurred. *Morris*, 449 F.3d at 684; *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir. 1999). The prisoner must do more than allege his personal belief that he is the victim of retaliation; he must provide more than conclusory allegations. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). And a plaintiff must plead facts that indicate that the complained of event would not have occurred "but for the retaliatory motive." *Id.* Finally, he must produce direct evidence of motivation or at least allege a chronology of events from which retaliation may plausibly be inferred. *Woods*, 60 F.3d at 1166.

Here, Plaintiff fails to establish retaliatory intent. The Fifth Circuit has held that the mere fact that one incident precedes another is not proof of a causal connection. *Huss v. Gayden*, 571 F.3d 422, 459 (5th Cir. 2009) (noting that "the *post hoc ergo propter hoc* fallacy [after this, therefore because of this] assumes causality from temporal sequence" which is a "false inference"). Additionally, even giving Plaintiff the benefit of the doubt, Carlile's actions—assuming they were in response to Plaintiff's assertion of a constitutional right—were, at most, *de minimis* action. Furthermore, he claims that the timeline of events demonstrates that he was retaliated against; however, the only reason known to the Court explaining why he had two disciplinary hearings stem from alleged assaults at his unit. (*See* ECF 29 at 5) ("I [Plaintiff] was called to go to one building to go speak to substitute counselor Ms. Julie Evans for Disciplinary Case 20200232594 a fighting case alleging I engaged in a fight with cellmate… [o]n 2/18/21, I was written up by correctional officer with a major case alleging that I attempted to throw (water) an unknown liquid at him."). Not to mention, it is unclear whether Carlile knew about the letters Plaintiff wrote to the El Paso County Clerk's Office or that she knew what those letters said. (*See* ECF 29 5–8).

As stated, the allegations Plaintiff makes against Carlile do not state a plausible claim for retaliation. First, Plaintiff alleges that he was written up for a false disciplinary charge by two unidentified officers after he filed his letter(s) with the El Paso County Clerk's office. (ECF 31 at 8). He also alleges two unidentified officers beat him after he visited Carlile because of his sister's report to the Ombudsman. (ECF 31 at 8). Simply put, Plaintiff has failed to show that the alleged retaliation would not have occurred "but for the [claimed] retaliatory motive." *See Johnson v. Rodriguez*, 110 F.3d at 310.

Likewise, Plaintiff's allegations that Carlile was retaliating against him do not surpass anything more than conclusory allegations based on assumptions. And it is hard to trace the

7

constitutional right Plaintiff was asserting that could give rise to a valid retaliation claim aside from the letter(s) he wrote—asking for a new cell and for assistance from Carlile does not implicate a constitutional right. Notably, a claim for relief under § 1983 "must allege the deprivation of a right secured by the Constitution or laws of the United States by a defendant acting under color of state law." *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002). It is well settled that a prisoner does not have a constitutional right to an effective grievance procedure, and he has no due process liberty interest in having grievances resolved to his satisfaction. *Geiger v. Jowers*, 404 F.3d 371, 373–74 (5th Cir. 2005); *Hill v. Walker*, 718 F. App'x 243, 249–50 (5th Cir. 2018). Moreover, the failure of the prison to follow its own policies, including the failure to address prisoner grievances, is not sufficient to make out a civil rights claim. *Richardson v. Thornton*, 299 F. App'x 461, 464 (5th Cir. 2008) (citing *Meyers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)).

Plaintiff has failed to allege a plausible claim for retaliation against Carlile. Accordingly, Plaintiff's retaliation claim against Carlile should be dismissed.

Plaintiff also asserts a claim against Carlile for conspiracy. To state a claim for conspiracy under § 1983, the plaintiff must allege facts that indicate: (1) there was an agreement among individuals to commit a deprivation, and (2) an actual deprivation of a constitutional right, not merely a conspiracy to deprive. *Jabary v. City of Allen*, 547 F. App'x 600, 610 (5th Cir. 2013) (citing *Cinel v. Connick*, 15 F.3d 1338, 1343 (5th Cir. 1994)); *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984). Conclusory allegations are insufficient; a plaintiff must allege facts that evince a preceding agreement and not merely parallel conduct that could be independent action. *Jabary*, 547 F. App'x at 610 (quoting *Twombly*, 550 U.S. at 557).

Plaintiff alleges that Defendants Gurrola, Carlile, Judd, and Evans "individually and collectively agreed in concert to harass and retaliate" against Plaintiff but does not provide details

8

on timing of this alleged agreement. (ECF 31 at 12). Plaintiff also claims that because many of the defendants have worked at the same unit for many years, have offices close to one another, and have relationships that they must have conspired. (ECF 31 at 9). Friendliness alone does not establish a conspiracy for § 1983 purposes. *See Lumpkins v. Office of Cmty. Dev.*, 621 Fed. Appx. 264, 269 (5th Cir. 2015).

Similarly, Plaintiff claims that Carlile said "they don't want him here anymore." (ECF 29 at 7). Even if Carlile did say that, it is unclear who "him" or "they" are and whether that statement has anything to do with Plaintiff. Likewise, that statement does not indicate an agreement to harass or retaliate against Plaintiff.

In sum, Plaintiff does nothing more than make bald assertions relying on the alleged actions of unnamed/unknown individuals taking part in a claimed conspiracy. (*See* ECF 29 at 6). A Plaintiff needs more than "bald allegations that a conspiracy existed" to sufficiently state a claim under § 1983. *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir. 1987). Accordingly, Plaintiff's claim for conspiracy against Carlile should be dismissed.

Plaintiff's false imprisonment claim is not cognizable as to any of the named defendants. Specifically, as to Carlile, Plaintiff pleads no factual basis stating a colorable claim for false imprisonment. Plaintiff is lawfully imprisoned. Likewise, Plaintiff does not plead a factual basis for the Court to consider that would give rise to a false imprisonment claim against any of the Defendants, including Carlile.

Plaintiff's false imprisonment claim does not satisfy the plausibility standard to survive Defendant Carlile's 12(b)(6) Motion. Therefore, Plaintiff's false imprisonment claim against Carlile should be dismissed.

### B. Defendants Judd and Evans

Defendants Judd and Evans have been served but have not appeared in the lawsuit. (ECF 54; *see also* ECF 20). Although Defendants Judd and Evans have not made an appearance, "as a prisoner seeking redress from an officer or employee of a government entity, plaintiff's complaint is … subject to preliminary screening pursuant to 28 U.S.C. § 1915A regardless of whether he proceeds *in forma pauperis*." *Parker v. Moreno*, No. 3:01-CV-1283-D, 2002 WL 1758181 at *2 (N.D. Tex. July 26, 2002) (citing *Martin v. Scott*, 156 F.3d 578, 579–80 (5th Cir. 1998)). And "§ 1915A provide[s] for *sua sponte* dismissal, if the Court finds the complaint to be 'frivolous' or 'malicious' or if it 'fails to state a claim upon which relief may be granted' or 'seeks monetary relief against a defendant who is immune from such relief.'" *Parker*, 2002 WL 1758181 at *2. Importantly, "[a] complaint fails to state a claim upon which relief may be granted…if it fails to satisfy the plausibility standard set out in *Twombly* and *Iqbal*. *See Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 679) (setting out that the pleading standard under the federal rules not only specify that the complaint must be plausible on its face, but it must bring forth sufficient factual allegations that nudge a claim across the line from conceivable to plausible).

Like Plaintiff's claims against Carlile, he asserts claims against Judd and Evans for harassment, retaliation, conspiracy, and false imprisonment. Judd and Evans's involvement in the alleged retaliatory conspiracy in Plaintiff's Amended Complaint is limited to their role in disciplinary proceedings in which Defendant Judd tried Plaintiff for two disciplinary cases for assault and Defendant Evans represented Plaintiff in those proceedings. (ECF 29 at 5). Plaintiff alleges that the disciplinary proceedings were brought in retaliation for his written letter(s) to the El Paso County Clerk's Office about his criminal conviction and prison conditions.

10

With respect to Plaintiff's harassment claim against Judd and Evans, he fails to plead plausible factual allegations that could give rise to claims for harassment. Likewise, to state a claim under § 1983, Plaintiff must allege facts showing he was deprived of a Constitutional right and that the deprivation occurred under color of state law. *See Flagg Bros. Inc.*, 436 U.S. 149, 155 (1978); *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999). Here, Plaintiff has alleged no facts that Judd or Evans did anything to him to give rise to a cognizable harassment claim. Judd and Evans simply carried out their duties as prison officials by handling Plaintiff's disciplinary proceedings; thus, his harassment claims fail as to both Judd and Evans.

Similarly, Plaintiff's retaliation claims fail as to both Judd and Evans. Plaintiff claims the disciplinary proceedings were brought against him because he wrote letters to the El Paso Clerk's Office. However, as noted above, there is no plausible link that these proceedings were brought in retaliation for any constitutional right Plaintiff was exercising, nor is there any indication that Judd or Evans knew about Plaintiff's letters to the El Paso County Clerk's Office. The disciplinary proceedings were apparently brought against Plaintiff for assaulting officers and his cellmate. (*See* ECF 29 at 5). And Plaintiff's own version of the facts in his Amended Complaint (ECF 29) discuss multiple instances in which Plaintiff was involved in physical altercations with prison employees and fellow inmates. (*See* ECF 29 at 5).

Plaintiff fails to plead any facts aside from the timing of the events to allege he was retaliated against for writing letters or exercising any constitutional right. Plaintiff's reliance on the timing of events has critical logical deficiencies. The fact that Plaintiff had two disciplinary proceedings brought against him after he wrote letters to the El Paso County Clerk's Office is not persuasive to show the disciplinary proceedings were brought in retaliation. Also, Plaintiff getting into altercations and writing letters to the El Paso County Clerk's Office are two events that were

primarily in Plaintiff's control. He apparently assaulted officers and a fellow inmate, which lead to disciplinary proceedings. He also wrote letters to the El Paso County Clerk's Office. Plaintiff was the actor who put those events in motion, which diminishes his argument about the timing of those events evidencing a retaliatory conspiracy. In sum, there is no evidence that these disciplinary proceedings in which Evans and Judd were involved would not have occurred but for the retaliatory motive Plaintiff alleges. *See Johnson*, 110 F.3d at 310 (stating that Plaintiff must show the alleged retaliation would not have occurred but for the alleged retaliatory motive).

In other words, simply because Plaintiff was subjected to disciplinary proceedings after he wrote letters to the El Paso County Clerk's Office does not mean the disciplinary proceedings must have been retaliatory. Likewise, as noted regarding the retaliation claim against Carlile, there is no evidence that Judd or Evans knew anything about the letters Plaintiff sent to El Paso, much less that they had knowledge of what those letters said. Plaintiff's allegations of retaliation by Judd and Evans are highly speculative and fail to prove anything beyond a coincidental timeline, which is insufficient. *See Huss*, 571 F.3d at 459 (noting that just because one thing happens before another does not prove a sufficient causal connection for a retaliation claim).

The only direct involvement Judd and Evans have in the alleged retaliatory conspiracy against Plaintiff stem from the disciplinary hearings. Otherwise, Judd and Evans are not named or implicated in the other factual allegations. Because there are no factual allegations tending to prove that Judd tried and convicted Plaintiff for any reason other than alleged assaults, his retaliation claim against Judd should be dismissed. Likewise, Evans' role representing Plaintiff, even if he was convicted at the disciplinary proceedings, does not prove she took part in a retaliatory conspiracy against Plaintiff that opens the door to a cognizable § 1983 claim.

Next, Plaintiff's claims against Judd and Evans for conspiracy fail for many of the same reasons his conspiracy claim against Carlile fails. Plaintiff alleges that Defendants Gurrola, Carlile, Judd, and Evans "individually and collectively agreed in concert to harass and retaliate" against Plaintiff but does not provide details on timing of this alleged agreement. (ECF 31 at 12). Plaintiff also claims that because many of the defendants have worked at the same unit for many years, have offices close to one another, and have relationships that they must have conspired. (ECF 31 at 9). Friendliness alone does not establish a conspiracy for § 1983 purposes. *See Lumpkins v. Office of Cmty. Dev.*, 621 Fed. Appx. 264, 269 (5th Cir. 2015). There are no factual allegations in Plaintiff's complaint for a cognizable conspiracy claim to pass muster against Defendants Judd and Evans. Accordingly, the conspiracy claims against Judd and Evans should be dismissed.

Finally, Plaintiff asserts claims against both Judd and Evans for false imprisonment. There are no factual allegations in Plaintiff's Amended Complaint that could give rise to a plausible false imprisonment claim against Judd or Evans. As noted, the only involvement by Judd and Evans according to Plaintiff is related to his disciplinary proceedings. Accordingly, the false imprisonment claims against Judd and Evans should be dismissed.

## I.     RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion to Dismiss filed by Defendant Carlile be GRANTED, that Defendants Judd and Evans be dismissed *sua sponte* under 28 U.S.C. § 1915A and Plaintiff's Amended Complaint be DISMISSED with prejudice.

## II.     INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED February 14, 2024.

_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).